UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
MANOLO MASCARINAS, AS THE ADMINISTRATOR OF         Index #: 20CV1235
THE ESTATE OF FAUSTINO DIOSO a/k/a FAUSTINO A.
DIOSO, AND LOURDES DIOSO;
                         Plaintiff,                COMPLAINT

                                                   JURY TRIAL DEMANDED
             -v-

THE CITY OF NEW YORK, NYPD POLICE OFFICER AMIR
PALI, individually and in his official capacity, NYPD
POLICE OFFICER SALVATORE BALLISTERI, individually
and in his official capacity, John Does 1-10, employees
of The City of New York, Richard Roes 1-10, employees of
The City of New York.
                         Defendants.
-----------------------------------------------------------------------x

By and through his attorneys, Wylie Stecklow PLLC, Plaintiff Manolo Mascarinas, as the Administrator of the Estate of Faustino Dioso, alleges upon knowledge, information, and/or belief as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff Manolo Mascarinas, as the Administrator of the Estate of Faustino Dioso, seeks relief for Defendants' violation of Faustino Dioso's rights, privileges, and immunities secured by 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of New York.

2. It is alleged that the Defendants, acting jointly and severally, committed a series of unlawful acts that culminated in the shooting death of Faustino Dioso, a 50 year old husband, son and brother, in his home on December 9, 2018, and, in so doing, deprived Faustino Dioso of rights secured by the United States Constitution, federal law, and the Constitution and laws of the State of New York.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 USC. §1367 to hear and decide claims arising under state law.

4. Venue in the Eastern District of New York is proper under 28 U.S.C. §1391(b)because a substantial part of the events giving rise to this action occurred within the district.

## PARTIES

5. Plaintiff Manolo Mascarinas is a resident of the United States. Plaintiff is the Administrator of the Estate of Faustino Dioso, limited letters of administration having been issued on February 27, 2020.

6. Plaintiff Lourdes Dioso ("Mrs. Dioso"), is a natural person and resident of United States, residing in the county of Richmond, City and State of New York. She is the surviving widow of Mr. Faustino Dioso.

7. Defendant City of New York ("City'") is a duly constituted municipal corporation of the State of New York. It is authorized under the laws of the State of New York to maintain a police department, the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

8. Defendant NYPD POLICE OFFICER AMIR PALI ("PO PALI") is an employee of the City and a member of the New York Police Department. He is one of the officers who fired fatal gunshots at Faustino Dioso. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

9. Defendant NYPD POLICE OFFICER SALVATORE BALLISTERI ("PO BALLISTERI") is a police officer in the employ of the City and is a member of the NYPD. He is one of the officers who fired fatal gunshots at Faustino Dioso. At all times relevant to the facts of the Complaint, said Defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

10. John Does 1-10 are employees of the City who were present at the scene on or about December 9, 2018 and whose names are presently unknown to Plaintiff. On information and belief, said Defendants handcuffed Faustino Dioso's injured or dead body; thereby, violating his right of bodily integrity. Their names will be added, upon motion, once Plaintiff has learned the names through the discovery process.

11. Richard Roes 1-10 are employees of the City who were either present at the scene on or about December 9, 2018, or who were the supervisors of members of the NYPD that were present on the scene, and whose names are presently unknown to Plaintiff. Their names will be added, upon motion, once Plaintiff has learned the names through the discovery process.

## FACTUAL ALLEGATIONS

12. The incident complained of herein occurred on or about December 9, 2018 at approximately 10:00 p.m., while Faustino Dioso was at his home with his wife, Lourdes Dioso, located at 30 Bridge Court, Staten Island, New York, in Richmond County, City and State of New York.

13. Faustino Dioso was a college graduate with a degree in Nursing who had been licensed in the Philippines before he emigrated to the United States.

14. Faustino Dioso also received multiple certifications from the Philippine Seafarers Training Center related to First Aid, survival and Fire Fighting.

15. In 2010, Faustino Dioso met and fell in love with Lourdes. Lourdes was also from the Philippines but was living in New York City. Faustino moved to the United States and in 2011, he married Lourdes.

16. Lourdes and Faustino lived in a home in Staten Island and worked in the nursing industry. Although Faustino was licensed as a Nurse in the Philippines, he could not work in the United States as nurse until his license was registered here.

17. Since their marriage, Faustino and Lourdes lived together in a full marriage, sharing love, affection, comfort, companionship, with each ensuring their spouse was fulfilled and taken care of in their home and their married life.

18. Faustino worked and earned a paycheck that he would use to provide for his wife. This included using his entire paycheck to pay a portion of the mortgage for the home they shared.

19. Most recently, Faustino had been taking online classes to increase his education while seeking to earn a Master's degree. He also continued to work in a nursing home while trying to obtain his nursing license. He was a friend, a brother, and husband and son to a wife and family that loved him dearly.

20. At the time the NYPD arrived at their home, Lourdes Dioso were asleep. The presence of the NYPD, including pointing flashlights into the Dioso home awoke Lourdes Dioso.

21. Upon being awoken by the presence and lights of the NYPD, Lourdes Dioso entered the living room / kitchen area of her home, where she saw her husband. She also encountered a police officer, at the doorway to the inside of her home, arguing through the doorway, with her husband, who was inside the doorway of the house.

22. Mrs. Dioso is a native of the Philippines and wears a hearing aid.

23. Mrs. Dioso approached the doorway, stood at the door and began to speak with the police officer.

24. The Dioso home is the basement apartment of a two-family home which the Dioso's own. The entrance to their basement home is protected by a fence and a gate to keep it private and to prevent the public from entering that area of the home. Directly inside the gate is a landing area, with a short flight of steps. At the bottom of the steps is the entrance to the Dioso house. There is also a sheet hanging at the top of the steps to ensure that the inner part of the Dioso home, the stairs leading to it, and the door, are not visible to the public and will not be used by the public without an invitation from the homeowners.

25. The stairway and door immediately surround and are associated with the home. Those areas are protected from plain view and public view and are intimately linked to the home, both physically and psychologically.

26. By protecting the stairs and door from plain view and public view, the Dioso's exhibited an actual (subjective) expectation of privacy in those areas that is reasonable.

27. Access to the stairs leading to the basement, and access to the door at the bottom of the stairs, is possible only by entering through the gate into the landing area, moving past the sheet, and descending the stairs.

28. Mr. and Mrs. Dioso had a reasonable expectation of privacy in all areas of the landing and stairs that are separated from the street by the gate and fence.

29. Mr. and Mrs. Dioso had a reasonable expectation of privacy in those areas of the stairs and doorway that are shielded from view by the general public.

30. In order for the defendant Police Officers to be either in the doorway to the inner part of her home, or standing on the stairways leading to that doorway, both officers would have had to enter through the gate into the landing area, move past the sheet and descend the stairs.

31. In order to reach the Dioso's doorway, the officers did not follow a path or other apparently open route that appears to be accessible to the general public without invitation by the homeowners.

32. Neither Lourdes or Faustino Dioso consented to the Police Officers entry into and down the stairs. This was a non-consensual entry into the private home and curtilage of the Dioso family.

33. Mrs. Dioso asked why the NYPD were arguing with her husband. Later she was told by the NYPD that there had been an incident previously where someone had used the "N word" towards someone else, and that the police were at her home investigating that incident.

34. Any incident involving private citizens and the use of a racial slur is certainly upsetting and disconcerting, however, it does not provide the NYPD or the individual defendants the authority, consent or exigent circumstances required to enter into someone's home and private space, where they have a reasonable expectation of privacy and security, without a warrant.

35. The NYPD unlawfully and tortiously entered the private home area of the DIOSO family and demanded that Faustino Dioso produce identification, even though he was inside his own home.

36. As the NYPD and Faustino Dioso exchanged words, Mrs. Dioso sought to diffuse the situation, standing in the doorway in front of the police officer as her husband was behind her searching for his identification.

37. During this time, the NYPD were instructed to leave by Faustino Dioso as he objected to their presence in his home, and objected to their request that he produce identification.

38. Defendant Officers did not leave as requested by Faustino Dioso. One Defendant officer continued to stand in the doorway with a flashlight pointed inside the Dioso home, and the other hand with a taser pointed at Mrs. Dioso and Faustino. The second individual Defendant officer on the scene stood a couple of steps up, observing the Defendant Officer in the doorway.

39. Instead of complying with the request of Faustino Dioso to leave, the NYPD continued to escalate the situation both, verbally and physically, by their conduct by pointing a flashlight and a taser at Faustino Dioso.

40. Mrs. Dioso moved towards her husband in an effort to further diffuse the situation, putting her arms around him and seeking to verbally oppose police conduct that had been creating a dangerous situation where none existed prior to the arrival of the NYPD.

41. Mrs. Dioso was able to hold her husband and seek to intervene to have the NYPD leave them alone. The officers were able to observe the conduct of both Mr. and Mrs. Dioso and thereby knew, or should have known, that she was not in danger.

42. There was no probable cause at this time to authorize the arrest of either Mrs. Dioso or Faustino Dioso.

43. There were no exigent circumstances present that would authorize the NYPD to enter the Dioso home without a warrant.

44. Either Defendant PO PALI or Defendant BALLISTERI, crossed the threshold and entered the inner part of the Dioso home with a taser gun pointed at the bodies of Mrs. Dioso and her husband, Faustino Dioso.

45. One of the NYPD defendant officers then discharged the taser towards Mrs. Dioso and Faustino Dioso.

46. The taser either missed the target or was defective as it had no effect on either Mrs. Dioso or Faustino Dioso.

47. The NYPD act of shooting and discharging a taser towards Mrs. Dioso and/or Faustino Dioso, while they were in their home, further exacerbated this situation, creating a dangerous interaction where none existed prior to the arrival of the NYPD.

48. As soon as the defendant officer discharged the taser, the defendant officer ran out of the inner part of the Dioso home and up the stairs that connect the inner part of their home to the Dioso's private landing area at ground level.

49. Faustino Dioso followed the Defendant police officers up the steps towards the private landing area at ground level.

50. Mrs. Dioso was able to observe her husband this entire time and did not observe Faustino Dioso to have anything in his hands as he followed the defendant police officers up the stairs.

51. Mrs. Dioso observed her husband follow the Defendant police officers up the steps and past the sheet, and then she heard at least six (6) gun shots.

52. The defendant police officers had shot Faustino Dioso.

53. One of the defendant police officers was also shot, either by the other police officer defendant or by a ricochet of one of his own bullets.

54. After the officers shot Faustino, and while he was laying on the ground wounded, they flipped him over onto his stomach, pulled his hands back behind his back, and rear-handcuffed him.

55. Upon information and belief, an EMS ambulance eventually arrived on the scene and took Faustino Dioso to the hospital.

56. Upon information and belief, Faustino Dioso was still alive at the time that he was transported to the hospital.

57. Faustino Dioso died as a result of the shooting by the defendant NYPD officers.

58. During the time that Faustino Dioso lay shot in the landing area, his wife, Mrs. Dioso saw him and observed him.

59. After Faustino Dioso was removed by the ambulance, the NYPD forced Mrs. Dioso to leave her home and go the NYPD precinct.

60. Mrs. Dioso was held against her will at the precinct for many hours. At no point was she told that she was free to leave at any time. At no point was she told that she was not required or obligated to answer the questions of the NYPD.

61. While at the precinct, Mrs. Dioso was interrogated for at least forty (40) minutes by members of the NYPD with the assistance of a Tagalog interpreter.

62. The NYPD took control of the entire Dioso home including the landing area, the stairs and the inner part of their family home.

63. Mrs. Dioso was barred from returning to her home for at least 48 hours.

64. During the incident, the defendant NYPD officers failed to identify that Mrs. Dioso and Faustino Dioso were from the Philippines, and that Mrs. Dioso had a hearing loss issue and could only fluently communicate in Tagalog.

6

65. In 2016, the NYPD provided all its officers with cell phones thereby enabling direct access to Language Line in the field, a telephonic service that provides interpretation in over 170 languages to all members of the NYPD.

66. Since 2017, as a result of *Padilla v. City of New York*, a lawsuit filed by domestic violence victims who did not speak fluent English, the NYPD has been providing enhanced training to members of the service on how to determine when someone needs language assistance, which one of an array of available tools is best suited to the situation, when to use a telephonic interpreter and how to access an interpreter 24/7.

67. The defendant NYPD officers did not attempt to identify what language Mrs. Dioso and Faustino Dioso spoke.

68. The defendant NYPD officers negligently failed to identify that Mrs. Dioso and Faustino Dioso were not fluent English speakers.

69. The defendant NYPD officers negligently failed to identify that Mrs. Dioso and Faustino Dioso were not Spanish speakers.

70. The defendant NYPD officers negligently failed to identify that Mrs. Dioso and Faustino Dioso spoke Tagalog.

71. The defendant NYPD officers negligently failed to utilize language line, a telephonic interpreter or any of the available tools that the NYPD has allegedly trained its members of the service on since 2017, to assist in communicating with Mrs. Dioso or Faustino Dioso.

72. A Notice of Claim pursuant to New York General Municipal Law § 50-e was timely served upon Defendant City. More than thirty days have elapsed without the matter being resolved by City. The Notice of Claim identified the two defendant officers by name and provided information regarding the actions that the officers took during the incident the Dioso home and was sufficient to put the officers and the City on notice of the conduct that they were alleged to have engaged in.

73. On or about February 24, 2020, the City of New York conducted a 50h hearing of the Estate of Faustino Dioso by the estate administrator, Manolo Mascarinas.

74. Additionally, on the same date, the City of New York questioned Lourdes Dioso.

75. Mrs. Dioso was available at the 50h hearing date even though the confirmed witness was the estate administrator, Manolo Mascarinas. However, no Tagalog interpreter was present, so in good faith, Manolo Mascarinas acted as interpreter for the questions posed to Mrs. Dioso.

76. Since the date of the 50h hearing, the City of New York has not submitted a notice or request for a further 50h hearing of Mrs. Dioso concerning her claim and damages.

FEDERAL CLAIMS FOR RELIEF
FIRST CLAIM FOR RELIEF

*(Pursuant to 42 U.S.C. §1983 for Violations of the Fourth
and Fourteenth Amendments against all the Individual Defendants)*

77. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

78. At the time of the incident complained of herein, the Individual Defendants were all employees of the Defendant City and acted under color of law as police officers.

79. The aforesaid actions of said Defendants deprived Faustino of life and liberty without due process of law in violation of the Fourteenth Amendment.

80. The handcuffing of Faustino's injured body by John Does 1-10, employees of the City whose names are presently unknown to the Plaintiff, deprived Faustino of his right to bodily integrity in violation of the Fourteenth Amendment. Such actions shock the conscience and should be not tolerated in a civilized society or permitted by employees of the City.

81. Said actions also deprived Faustino of his right to be secure in his person and home against unreasonable searches and seizures in violation of the Fourth Amendment.

82. The aforesaid actions of said Defendants were an unreasonable and unnecessary use of excessive force and unlawful entry into the DIOSO home that deprived Faustino and Lourdes of rights, privileges and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983.

SECOND CLAIM FOR RELIEF

*(Supervisory Liability)*

83. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

84. Richard Roe Supervisor defendants performed supervisory functions of defendants PO PALI and PO Ballisteri and John Doe Defendants.

85. The Supervisor defendants failed to properly supervise said officers and took no action that would have prevented the injuries sustained by Faustino.

86. The supervisor defendants failed to ensure that the defendant Pos understood the enhanced training provided since 2017 concerning proper police conduct when encountering foreign speaking individuals, especially if encountered during a domestic violence call.

8

87. Upon information and belief, certain members of the NYPD reported to various news and media that the defendant POs were at the DIOSO home due to a domestic violence report. Mrs. Dioso did not make any such calls and did not believe there was any domestic violence incident that required police assistance or involvement.

88. As a direct and proximate cause of said Defendants' failure to properly supervise their subordinates, Faustino and Mrs. Dioso' constitutional rights were violated as aforementioned in violation of 42 U.S.C. §1983.

## STATE CLAIMS FOR RELIEF
## THIRD CLAIM FOR RELIEF

*(For Conscious Pain and Suffering against
Defendants PO PALI and PO BALLISTERI and City)*

89. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

90. Defendants PO PALI and PO BALLISTERI without just cause, or provocation, used force *and/or* deadly physical force against Faustino. The use of such force was not justified or warranted under the circumstances and constituted unreasonable and unnecessary force.

91. The use of such force did not immediately cause Faustino's death. As a result, he suffered and experienced a fear of impending death, severe emotional distress, and conscious pain and suffering.

92. The Defendant City is responsible for the actions of said Defendants that were taken in the scope of their employment as police officers.

## FOURTH CLAIM FOR RELIEF

*(For Wrongful Death against Defendants
PO PALI and PO BALLISTERI and City)*

93. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

94. By virtue of the wrongful death of Faustino Dioso, the family of Faustino Dioso has been deprived of the support, maintenance, and society of the prior relationship and communion with Faustino Dioso, as well as Faustino Dioso's society, guidance and of potential enhanced inheritance from Faustino Dioso.

95. That in connection with the injuries suffered by Faustino Dioso, and the resulting death, plaintiffs necessarily incurred, and have become obligated to pay funeral and other additional expenses with the settlement of the estate of Faustino Dioso.

96. As a result of the foregoing, the distributees and next of kin of Faustino Dioso have sustained damages; that as a result of the aforesaid occurrence, Faustino suffered severe injuries to his body and limbs, a severe shock to his nervous system and certain internal injuries, and were caused to suffer severe pain and mental anguish which said injuries resulted in death, with resulting expenses or obligation for funeral and burial, all to the damage of Faustino Dioso and plaintiffs herein.

97. Defendants PO PALI and PO BALLISTERI, acting within the scope of their employment, caused the death of Faustino by the use of a firearm, without cause or justification.

98. Said actions render them liable for the wrongful death of Faustino.

99. Defendant City is responsible for the actions of said Defendants that were taken in the scope of their employment as police officers.

### FIFTH CLAIM FOR RELIEF

*(For Assault and Battery against Defendants
PO PALI and PO BALLISTERI and City)*

100. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

101. The direct actions of shooting and killing Faustino by Defendants PO PALI and PO BALLISTERI were intentional, malicious and were committed with wanton disregard for the rights of Faustino.

102. The actions of said Defendants were unjustified and unnecessary in the performance of their duties as police officers and were unreasonable and unwarranted and constituted an excessive use of force.

103. The actions aforesaid constituted unlawful assaults and batteries upon Faustino.

104. The said Defendants acted in concert and conspired to commit said assaults and batteries upon Faustino.

105. As a result of said conduct of said Defendants, Faustino sustained serious and severe injuries, both physical and emotional.

106. Defendant City is responsible for the actions of said Defendants as the acts were committed within the scope of their employment as police officers.

## SIXTH CLAIM FOR RELIEF

*(For Negligence against All Defendants)*

107. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

108. The individual officers, acting within the scope of their employment, negligently discharged their duties by failing to exercise a reasonable degree of care in the discharge of some of their duties, and thereby failed to properly communicate with Mrs. Dioso or Faustino, failed to diffuse a situation, and created a dangerous situation that caused Faustino to sustain the injuries and deprivations aforementioned.

109. The acts of negligence of the officers included, but are not limited to, failing to identify that Mrs. Dioso and Faustino did not speak fluent English; failing to identify that they were Tagalog native speakers; failing to utilize language line, a telephonic interpreter or any of the available tools that the NYPD has allegedly trained its members of the service on since 2017, to assist in communicating with Mrs. Dioso or Faustino Dioso; negligently pointing a taser at Mrs. Dioso and Faustino and other conduct that was improper under the circumstances and caused the incident to increase in tension and danger.

110. The actions of the officers violated the Patrol Guide, and the NYPD training, including, but not limited to the enhanced training, allegedly incorporated into NYPD training protocol as a result of *Padilla v. City of New York*, to members of the service on how to determine when someone needs language assistance, as well as the Use of Force and Deadly Force policies.

111. Defendant City is responsible for the negligence of its officers committed within the scope of their employment.

112. Defendant City was negligent by failing to properly train or supervise its officers in how to properly respond to service calls involving individuals that are not native speakers and may need language assistance, of by providing training but not ensuring the officers that would be responding to service calls understood and learned the training sufficiently.

113. Defendant City was negligent by failing to properly train or supervise its police officers in the use of Tasers, physical force, deadly force, or the continuum of force.

114. By the actions described above, each and every Defendant, jointly and severally, has committed the foregoing wrongful acts against Faustino, which are actionable under the Constitution and laws of the State of New York.

115. The aforementioned acts and conduct proximately caused the injuries sustained by Faustino and violated the statutory and common law rights guaranteed to them by the Constitution and the laws of the State of New York.

### SEVENTH CLAIM FOR RELIEF
*(For Loss of Consortium by Mrs. DIOSO against PO PALI and PO BALLISTERI and City)*

116.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

117.   Lourdes Dioso, the surviving spouse of Faustino Dioso, sustained the loss of services, society, companionship and consortium of her spouse.

118.   The Defendant City is responsible for the actions of said Defendants that were taken in the scope of their employment as police officers.

### PUNITIVE DAMAGES

119.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

120.   The acts of the Individual Defendants were willful, wanton, malicious and oppressive and were resulted in the harm to Faustino as outlined herein. Such acts therefore warrant an award of punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a. Compensatory damages in an amount deemed fair and just by a jury or by this honorable Court.

b. Punitive damages against the Individual Defendants;

c. An award of the costs and expenses of this action including attorneys' fees to the Plaintiff pursuant to 43 U.S.C. § 1988; and

d. Any such other and further relief as this Court may deem appropriate.

A JURY TRIAL IS DEMANDED

DATED: New York, New York
March 4, 2020

                                        Respectfully submitted,

                                        WYLIE STECKLOW PLLC

                                        BY: _____
                                        Wylie M. Stecklow
                                        Attorneys for Plaintiffs
                                        233 Broadway, Suite 820
                                        New York, NY 10279
                                        (212) 566 8000
                                        ECF@wylielaw.com